Citation Nr: 1331582 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 06-28 933 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in 
St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for hypertension, to include as secondary to service-connected post-traumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

J. Young, Associate Counsel





INTRODUCTION

The Veteran served on active duty from May 1963 to March 1987.

This matter is before the Board of Veterans' Appeals (Board) on appeal from an April 2004 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

In July 2007, the Veteran withdrew his prior request for a hearing before the Board in writing; consequently, the request is deemed withdrawn and there are no outstanding requests of record. 38 C.F.R. § 20.704(e).

The matter was previously before the Board in August 2010, in September 2011, and in June 2013 and was remanded for further development and adjudication. The Board finds that there has been substantial compliance with the mandates of the remand orders. See Stegall v. West, 11 Vet. App. 268 (1998).

A claim of entitlement to service connection for ischemic heart disease secondary to exposure to Agent Orange was raised by the record. This issue was previously referred in December 2012 and in June 2013 but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Thus, the Board does not have jurisdiction over this issue. 

This appeal was processed using the VA paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.


FINDING OF FACT

The Veteran's current hypertension disability was not incurred in or aggravated by active service and is not caused or aggravated by a service-connected PTSD disability.


CONCLUSION OF LAW

Hypertension was not incurred in or caused by active service and is not proximately due to or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. §§ 3.303, 3.310 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Notice and Assistance

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). In this matter, substantially compliant notices were sent to the Veteran in January 2006 and in June 2013. After the notices were provided, the Veteran was afforded the opportunity to submit additional evidence and he did so. The claim was most recently readjudicated in a July 2013 Supplemental Statement of the Case 
(SSOC).

Regarding VA's duty to assist, VA obtained the Veteran's service treatment records (STRs), service personnel records, and post-service medical records, to include records from the Social Security Administration (SSA).

The Veteran suggested in an October 2005 statement, that the medical records that he received from VA did not contain all of his service treatment records. The Appeals Management Center (AMC) confirmed with the National Personnel Records Center (NPRC) that all of the Veteran's service treatment records (STRs) were sent to the RO in December 2010 and the AMC noted that they are associated with his claims file.

As the Veteran's claims file does not contain records from the Veteran's service prior to July 1978 and the NPRC has indicated that all of the Veteran's STRs are associated with the claims file, the Board shall consider those records missing. Under such circumstances, the Court has held that there is a heightened obligation on the part of VA to explain findings and conclusions and to consider carefully the benefit of the doubt rule. See Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). However, the case law does not lower the legal standard for proving a claim for service connection, but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the claimant. See Russo v. Brown, 9 Vet. App. 46 (1996). Moreover, there is no presumption, either in favor of the claimant or against VA, arising from missing records. See Cromer v. Nicholson, 19 Vet. App. 215 (2005) (the Court declined to apply an "adverse presumption" where records have been lost or destroyed while in Government control which would have required VA to disprove a claimant's allegation of injury or disease in service in these particular cases).

The Veteran was afforded VA examinations in January 2013 and in October 2010. An addendum medical opinion was obtained in June 2013. The January 2013 and June 2013 examination/medical opinions are sufficient, as the examiner conducted a complete examination, recorded all relevant findings, and offered opinions based on consideration of the record, including the Veteran's statements. The Board finds that VA satisfied its duty to assist.

II. Legal Criteria

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110 ; 38 C.F.R. § 3.303(a). Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Certain chronic diseases (including hypertension) may be service connected on a presumptive basis if manifested to a compensable degree in a specified period of time post-service. 38 U.S.C.A. § 1112, 1113; 38 C.F.R. § 3.307, 3.309 (2013).

Under 38 C.F.R. § 3.310, service connection may be granted for disability that is proximately due to or the result of a service-connected disease or injury, or for the degree of disability resulting from aggravation of a nonservice-connected disability by a service-connected disability. See also Allen v. Brown, 7 Vet. App. 439, 448 (1995).

During the course of this appeal 38 C.F.R. § 3.310 was amended. Effective October 10, 2006, VA amended 38 C.F.R. § 3.310 to implement the decision in Allen, which addressed the subject of the granting of service connection for the aggravation of a nonservice-connected condition by a service-connected condition. See 71 Fed. Reg. 52,744-47 (Sept. 7, 2006). The existing provision at 38 C.F.R. § 3.3 10 (b) was moved to sub-section (c). The amended 38 C.F.R. § 3.310(b) institutes additional evidentiary requirements and hurdles that must be satisfied before aggravation may be conceded and service connection granted. To whatever extent the revised regulation may be more restrictive than the previous one, the Board will afford the Veteran review under both the old and new versions. See VAOPGCPREC 7-2003 (Nov. 19, 2003).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5 107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

III. Factual Background

The Veteran contends that his current hypertension disability was caused by, incurred during service, or is due to his service connected PTSD.

The Veteran also contends that he was diagnosed with and treated for hypertension during his military service.

On the Veteran's July 1978 pre-commission Report of Medical Examination, his heart and vascular systems were noted as "normal" and his blood pressure reading was recorded as 112/70. On the accompanying July 1978 pre-commission Report of Medical History, the Veteran denied a history of high or low blood pressure, heart trouble, pain or pressure in chest, or shortness of breath.

The Veteran's STRs indicate multiple elevated and normal blood pressure readings. However, a review of the record does not reveal a diagnosis or treatment of hypertension during service.

On the Veteran's November 1986 Report of Medical Examination, his heart and vascular systems were noted as "normal," but no blood pressure reading was recorded. In the accompanying November 1986 Report of Medical History, the Veteran denied a history of high or low blood pressure, heart trouble, pain or pressure in chest, or shortness of breath.

In a November 1986 medical narrative, the treating physician noted that the Veteran's past medical history was significant for a forty pack year history of smoking. The Veteran reported an allergy to penicillin and the physician noted that the remaining past medical history was unremarkable.

The Veteran was diagnosed with PTSD in July 2005.

In an October 2005 statement, the Veteran stated that he was treated for high blood pressure during service at Wiesbaden Air Force Base Hospital in Germany in 1975.

SSA records indicate that the Veteran's circulation problems in both legs, back problems, and high blood pressure disabilities were claimed by the Veteran to have begun in May 1997. SSA records show that based on the severity of the Veteran's conditions and the medical experience of SSA with his type of conditions, it was determined that his conditions became disabling in December 2002. The SSA considered evidence from a VA Clinic which showed that his condition became disabling in December 2002.

The October 2010 VA examiner denoted the onset of the Veteran's hypertension as 1974. The examiner opined that the Veteran's hypertension is not caused by or a result of his PTSD. Nor is it aggravated by the PTSD. The rationale provided by the examiner was that hypertension is a separate entity.

In September 2011, the Veteran's representative submitted medical articles which suggest a relationship between PTSD and hypertension.

The January 2013 VA examiner found the Veteran was diagnosed with hypertension in 2001 and is currently on continuous medication for this condition. The Veteran reported that he controlled his hypertension through exercise. The examiner opined that the Veteran's hypertension was less likely than not incurred in or caused by the claimed in-service injury. The examiner found that although the Veteran had elevated readings of blood pressure during service, he did not meet the criteria for hypertension during service. In a June 2013 addendum VA medical opinion, the January 2013 examiner indicates that there is insufficient medical literature to support that PTSD can aggravate or cause high blood pressure chronically.

IV. Analysis

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the medical evidence pertinent to the claim on appeal. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the U.S. Court of Appeals for the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claims.

Although the record establishes that the Veteran has hypertension, the evidence does not demonstrate that the disability was caused or aggravated by service-connected PTSD. None of the Veteran's health care providers have identified a link between the two disabilities.

While the Veteran has submitted medical articles suggesting a correlation between hypertension and PTSD, the Board's own review of the medical articles submitted by the Veteran demonstrates that they do not satisfy the equipoise standard. They simply do not show that it is at least as likely as not that in this particular case the Veteran's service-connected PTSD caused or aggravated his hypertension. These documents are simply too general in nature to provide the necessary evidence to show causation or aggravation. See Sacks v. West, 11 Vet. App. 314, 316-17 (1998). The medical treatise, [textbook, or article] must provide more than speculative, generic statements not relevant to the veteran's claim, but must discuss generic relationships with a degree of certainty for the facts of a specific case. Wallin v. West, 11 Vet. App. 509, 514 (1998). The articles in the current case do not provide any statements for the facts of the Veteran's specific case. Therefore, the Board concludes that they do not show that it is at least as likely as not that in this particular case the Veteran's service-connected PTSD caused or aggravated his hypertension.

Further, the June 2013 VA medical opinion indicates that there is insufficient medical literature to support that PTSD can aggravate or cause high blood pressure chronically.

The Veteran was diagnosed with PTSD in July 2005, yet the probative medical evidence indicates that the Veteran was diagnosed with hypertension in 2001 and the medical opinions of record do not provide the opinion that the Veteran's service-connected PTSD caused or aggravated his hypertension disability.

The Board has considered the Veteran's statements linking his hypertension to service-connected PTSD, but as a lay person, he is not competent to opine as to medical etiology or render medical opinions. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Grover v. West, 12 Vet. App. 109, 112 (1999). The Board acknowledges that the Veteran is competent to testify as to observable symptoms, but finds that his opinion as to the cause of his hypertension simply cannot be accepted as competent evidence and is clearly outweighed by the medical opinions against the claim. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1131, 1336 (Fed. Cir. 2006). Thus, the Board finds that the competent evidence of record weighs against the claim for service connection on a secondary basis.

Turning to whether service connection is warranted on a direct basis. The Veteran's STRs reveal multiple elevated blood pressure readings in service, but also reflect normal blood pressure readings. The Veteran contends that he was diagnosed with hypertension during service; however, the preponderance of the medical evidence weighs against the Veteran's claim. The Veteran's July 1978 pre-commission Report of Medical Examination, his heart and vascular systems were noted as "normal" and blood pressure reading was recorded as 112/70. On the accompanying July 1978 pre-commission Report of Medical History, the Veteran denied a history of high or low blood pressure, heart trouble, pain or pressure in chest, or shortness of breath.

On the Veteran's November 1986 Report of Medical Examination, his heart and vascular systems were noted as "normal" and in the accompanying November 1986 Report of Medical History, the Veteran denied a history of high or low blood pressure, heart trouble, pain or pressure in chest, or shortness of breath.

The Veteran has inconsistently reported the date of onset of his hypertension. VA treatment records indicate that the Veteran reported the date of onset as 1974, but SSA records show the Veteran reported an onset year of 1997. The January 2013 VA examiner noted that based on a review of the VA treatment records, the Veteran began blood pressure medication in 2001 and that his personal medical history was silent for hypertension in 2001. Further, the Veteran specifically claims that he was treated for high blood pressure during service at Wiesbaden Air Force Base Hospital in Germany in 1975, however, a search for records of the alleged treatment resulted with no records being located. As it is noted above, the AMC was notified that all of the Veteran's STRs were sent to the RO in December 2010. As the claims file contains over a decade of STRs which are silent as to treatment for hypertension during the Veteran's military service, the Board finds the Veteran's assertions regarding in-service treatment for hypertension less than credible. The claims file contains records after the Veteran's alleged treatment and diagnosis of hypertension which contain negative responses by the Veteran and medical professionals as to symptoms of hypertension in service.

The January 2013 VA examiner opined specifically that there were some elevated blood pressure readings, but there were no consistent readings to declare a hypertension diagnosis, when referring to the Veteran's in-service and March 1989 blood pressure readings.

It is also noteworthy that the Veteran did not file a claim for service connection for hypertension for many years after service, despite submitting a claim for a back disability. This delay in filing a claim also diminishes the credibility of his current assertions that he had hypertension in service.

The Board finds highly probative and persuasive the opinions of not one but two VA examiners given over the course of this appeal that the Veteran's current hypertension disability is not related to his military service or caused or aggravated by his service-connected PTSD. The Board finds the October 2010 and January 2013 VA examiners' opinions highly probative as they had the benefit of a review of all the records in the claims folder. Further, they provided clear explanations for their conclusions. The Board notes that in the recent case of Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012) the Court held that "[t]here is no requirement that a medical examiner comment on every favorable piece of evidence in a claims file." Monzingo at 7 (citing Acevedo v. Shinseki, 25 Vet. App. 286, 293 (2012) (noting that the law imposes no reasons-or-bases requirement on examiners)). The Court instead has held that "examination reports are adequate when they sufficiently inform the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion." Id. The Board has considered the lay statements of record, but finds that they are less probative than the medical evidence.

As the competent and credible medical evidence indicates that the Veteran's hypertension onset in 2001, the Board finds that his hypertension did not incur within the presumptive period.

In sum, the competent credible evidence of record is against a finding that the Veteran had hypertension in service, or that his current hypertension disability is causally related to, or aggravated by active service, to include as secondary to service-connected PTSD. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5 107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


ORDER

Entitlement to service connection for hypertension, to include as secondary to service-connected PTSD is denied.



____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs